UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DWAYNE CASSELL**, <br><br> *Defendant.* | Case No. 1:00-cr-270-RCL-1 |

### MEMORANDUM ORDER

On January 22, 2024, the Court held a final revocation of supervised release hearing in which it heard testimony and received evidence that defendant Dwayne Cassell violated the terms of a civil protection order (Violation 1), used and possessed a controlled substance (Violation 2), and failed to participate in substance abuse treatment (Violation 3). Min. Entry (Jan. 22, 2024); Probation Pet., ECF No. 91. Senior Probation Officer Alexandria Conaway and Metropolitan Police Department Detective Douglas Hain testified for the government. At the close of evidence, the Court took the matter under advisement and invited the parties to submit briefing on whether the admission of certain exhibits violated the Federal Rules of Criminal Procedure and Mr. Cassell's constitutional rights. There are now four ripe motions pending before the Court: the government's Motion for Reconsideration, ECF No. 107; the defendant's Motion to Strike Out of Court Statements, ECF No. 113; the government's Motion to Continue, ECF No. 109; and the government's Motion for an Extension of Time, ECF No. 115. This Order resolves the parties' pending motions and provides a roadmap for future proceedings.

### I.  MOTION FOR RECONSIDERATION

During the final revocation hearing, Mr. Cassell argued that portions of his probation file constitute *Jencks* materials that the government must disclose under Federal Rule of Criminal

1

Procedure 32.1. Hearing Tr. 15:16–16:5, ECF No. 111. In response, the government argued that the materials at issue were not in its possession and, therefore, did not need to be disclosed. Hearing Tr. 16:6–11. The Court accepted Mr. Cassell's argument and ordered the government to disclose the requested materials promptly. Hearing Tr. 17:16–17. On January 26, 2024, the government filed a Motion for Reconsideration, arguing that Mr. Cassell's probation file should not be considered *Jencks* material because it is in the Probation Office's possession and not the government's. ECF No. 107. Mr. Cassell timely opposed. ECF No. 108.

"The Federal Rules of Criminal Procedure do not address the legal standard applicable to motions to reconsider interlocutory decisions, but courts in this District have applied the 'as justice requires' standard under Federal Rule of Civil Procedure 54(b)." *United States v. Caldwell*, No. 21-cr-28 (APM), 2022 WL 203456, at *1 (D.D.C. Jan. 24, 2022) (first citing *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015); and then citing *United States v. Hemingway*, 930 F. Supp. 2d 11, 12 (D.D.C. 2013)). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Bases for reconsideration include "when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (alteration in original) (internal quotation marks and citation omitted).

The government's motion does not acknowledge the legal standard for reconsideration, let alone consider its application here. *See* ECF No. 107. Indeed, none of the usual grounds for

reconsideration apply. *See Singh*, 383 F. Supp. 2d at 101. Instead, the government rehashes the same point it raised during the final revocation hearing: Mr. Cassell's probation file was not in its possession and, therefore, did not fall within its *Jencks* obligations. The Court can divine no basis for reconsidering its prior order except to give the government a mulligan. Accordingly, the government's Motion for Reconsideration is **DENIED**. The government is hereby **ORDERED** to provide the Court with a proposed order that directs the disclosure of probation file materials to defense counsel.[1]

## II.    MOTION TO STRIKE

During the final revocation hearing, Mr. Cassell objected to the admission of two lab reports that stated he had tested positive for the use of marijuana. Hearing Tr. 9:1–11, 9:16–24. Mr. Cassell further objected to the admission of two 911 calls made by Christina Giles,[2] two videos Ms. Giles recorded of Mr. Cassell showing him near her, and body camera footage showing Ms. Giles making statements to police. Hearing Tr. 25:16–19, 28:9–11, 31:3–4. The crux of Mr. Cassell's objection is that Federal Rule of Criminal Procedure 32.1(b)(2)(C) and the Due Process Clause of the Fifth Amendment entitled him to cross-examine both the lab examiner who prepared the drug test reports and Ms. Giles. The government did not call either witness during the final revocation hearing. Mr. Cassell's written filing, which elaborates on his oral motion, requests that the Court strike any testimony and exhibits admitted in violation of his right to confront these adverse witnesses. ECF No. 113. The government orally opposed Mr. Cassell's objections during the final revocation hearing and later supplemented its opposition in writing. ECF No. 116.

---

[1] During the final revocation hearing, the Court instructed the government to provide it with a proposed order. Hearing Tr. 52:17–24. Instead of doing so, the government filed its motion for reconsideration.

[2] Ms. Giles obtained the civil protection order against Mr. Cassell that forms the basis for Violation 1.

3

### A. Legal Standard

"Supervised release revocation hearings are not criminal trials and defendants are generally afforded more limited rights than criminal defendants." *United States v. Domenech*, No. 14-cr-183 (JDB/GMH), 2017 WL 1653151, at *5 (D.D.C. May 2, 2017) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). In particular, the Federal Rules of Evidence and the Confrontation Clause do not "strictly apply" to revocation hearings. *Id.* (first citing Fed. R. Evid. 1101(d)(3); and then citing *Ash v. Reilly*, 431 F.3d 826, 829–30 (D.C. Cir. 2005)); *see also United States v. Carthen*, 681 F.3d 94, 99–100 (2d Cir. 2012). However, under Federal Rule of Criminal Procedure 32.1, a defendant in a revocation hearing is entitled to "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). This right flows from the Fifth Amendment's Due Process Clause rather than the Sixth Amendment's Confrontation Clause. *See Domenech*, 2017 WL 1653151, at *5 (first citing *Morrissey*, 408 U.S. at 489; and then citing *Ash*, 431 F.3d at 830). When a defendant asserts Rule 32.1(b)(2)(C)'s cross-examination right, the court should apply a balancing test that "weigh[s] [the defendant's] right to confront the declarant against the government's asserted grounds for foregoing confrontation" and the reliability of the proffered hearsay. *See United States v. Stanfield*, 360 F.3d 1346, 1359–60 (D.C. Cir. 2004); *see also United States v. Peguero*, 34 F.4th 143, 154 (2d Cir. 2022). The court's goal is to determine whether the government has asserted "good cause for not allowing confrontation." *See Morrissey*, 408 U.S. at 489. If the government shows good cause, then the interest of justice does not require the witness to appear. *See* Fed. R. Crim. P. 32.1(b)(2)(C).

4

### B. Lab Reports

The Court concludes that the government has not shown good cause for failing to call the lab examiner who prepared the inculpatory drug test reports.[3]

The government's only argument for failing to call the lab examiner is the conclusory assertion that "the benefit of live testimony by a laboratory examiner is outweighed by the additional time and expense needed to secure their live testimony." ECF No. 116 at 8. The government may think so, but this Court disagrees. Mr. Cassell sought to attack the lab reports' reliability by cross-examining the sponsoring witness. *See* Hearing Tr. 21:18–24. However, the government's failure to call the preparing lab examiner unduly hindered Mr. Cassell's ability to develop his reliability objection. Defense counsel asked Senior Probation Office Conaway—the sponsoring witness—whether drug tests used by the Probation Office distinguish between delta-9 THC and its chemical analog, delta-8 THC, and whether the failure to distinguish these metabolites can result in false positives. Hearing Tr. 21:18–22. Senior Probation Office Conaway admitted that she could not answer defense counsel's questions because she is not a "scientist." *See* Hearing Tr. 21:23–24. Had the government called the lab examiner, Mr. Cassell would have been able to examine them concerning the reports' technical characteristics and the risk of false positives, thereby ensuring a fulsome adversarial presentation of the issues. These lab reports are essentially the beginning and end of the government's case; the government cannot evade meaningful challenges to this critical evidence by declining to call the only witness qualified to explain its genesis or establish its reliability.

Because Mr. Cassell's interest in confronting the person who prepared these lab reports—so that he can examine them concerning the reports' technical characteristics and the risk

---

[3] The drug test reports appear in exhibits 10 and 11.

of false positives—is inextricably intertwined with the reports' purported reliability, the Court finds that Mr. Cassell's interest in confrontation outweighs the government's interest in avoiding the additional time and expense needed to secure the lab examiner's testimony. *Cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (holding that affidavits showing the results of forensic analyses performed on drugs are testimonial statements and that analysts who prepare these affidavits are witnesses under the Confrontation Clause). The Court is keenly interested in hearing whatever the lab examiner has to say. Accordingly, the Court will not consider these lab reports unless Mr. Cassell first receives the opportunity to confront the lab examiner who prepared them.

### C.  911 Calls

The Court concludes that the 911 calls are reliable and that there is good cause to admit them.[4] Additionally, because the calls are nontestimonial, Mr. Cassell would not have grounds to challenge their admissibility under the Confrontation Clause even if it applied to revocation hearings with full force. This indicates that Mr. Cassell's constitutional interest in confronting Ms. Giles about the calls is negligible.

Several characteristics of the 911 calls at issue here render them reliable. During the calls, Ms. Giles "was speaking about events *as they were actually happening*, rather than describing past events." *Davis v. Washington*, 547 U.S. 813, 827 (2006) (emphasis in original) (internal quotation marks, alteration brackets, and citation omitted). Ms. Giles called the police for assistance with an ongoing emergency: Mr. Cassell's close physical proximity to her in violation of a stay-away order. Ms. Giles answered the operator's questions concerning her present location, her proximity to Mr. Cassell, the nature of Mr. Cassell's conduct, and the basis for her belief that Mr. Cassell should not be near her. And police ultimately responded to Ms. Giles's calls, albeit several hours

---

[4] The 911 calls appear in exhibits 2 and 3.

later. Having listened to the 911 calls and observed these hallmarks of reliability, the Court is persuaded that the statements contained within them are, in fact, reliable.

Besides demonstrating reliability, the circumstances surrounding the calls establish that Ms. Giles's statements were nontestimonial and, therefore, outside the ordinary scope of confrontation. *See id.* at 821, 827–28. Nontestimonial statements are those made "under circumstances objectively indicating that the[ir] primary purpose . . . is to enable police assistance to meet an ongoing emergency." *Id.* at 822. The Court is satisfied that the circumstances objectively indicate that Ms. Giles's primary purpose in placing the 911 calls was to enable police assistance to meet an ongoing emergency, not to act as a witness or give testimony. *See id.* at 827–28. Consequently, although the government has not averred any explanation for failing to call Ms. Giles, *see* ECF No. 116, Mr. Cassell has not established a constitutionally cognizable interest in examining her. To be clear, the Confrontation Clause does not "strictly apply" to revocation hearings. *See supra* Part II.A (quoting *Domenech*, 2017 WL 1653151, at *5). It is nevertheless significant that the Clause does not provide a constitutional right to examine nontestimonial hearsay. *See Davis*, 547 U.S. at 821. If a defendant cannot demand the right to examine nontestimonial hearsay at a criminal trial, when the full panoply of rights afforded by the Confrontation Clause and the Due Process Clause unquestionably apply, then it is hard to imagine a defendant demanding confrontation of the same testimony under a narrower conception of confrontation grounded only in due process. At the very least, it is not in the interest of justice to exclude statements that Mr. Cassell could not reasonably expect to exclude at trial.[5] Thus, there is good cause for not allowing confrontation.

---

[5] Because the calls contain only nontestimonial statements, they would not be subject to attack at trial under the Confrontation Clause. *See Davis*, 547 U.S. at 821. Moreover, they likely satisfy at least one exception to the rule against hearsay. *See, e.g.*, Fed. R. Evid. 803(1)–(2) (present sense impression and excited utterance exceptions, respectively). It is unlikely that Mr. Cassell could obtain their exclusion at trial.

**D. Cellphone Videos and Body-Worn Camera Footage**

The visual contents of the cellphone videos recorded by Ms. Giles are nonhearsay, meaning they do not constitute adverse witness testimony.[6] However, to the extent that the videos' accompanying audio contains hearsay statements, the Court will assume without deciding that the government has not shown good cause for admitting them. The Court will similarly assume without deciding that the government has not shown good cause for admitting hearsay statements made by Ms. Giles to police in body-worn camera footage.[7] The Court intends to ignore any hearsay statements contained within these video exhibits when it evaluates the evidence and renders its final decision on revocation.

The cellphone videos at issue largely speak for themselves. Defense counsel has effectively conceded that they depict Mr. Cassell. *See* Hearing Tr. 32:1–2. They show him sitting in his car or standing on a sidewalk. The approximate distance of the recording device from Mr. Cassell is evident from viewing the videos. Notably, during one of the videos, Ms. Giles turned the camera on herself, revealing that she was holding the recording device and, therefore, was close to Mr. Cassell. Although the videos contain brief statements by Ms. Giles, *see* ECF No. 116 at 6, the videos' visual content is not assertive and does not implicate the rule against hearsay, *see* Fed. R. Evid. 801(a). Admission of the videos alone does not automatically transform Ms. Giles into an adverse witness. Only the admission of her recorded statements can do that. Accordingly, admitting the videos' non-verbal visual contents does not violate Rule 32.1 or the Due Process Clause. *See* Fed. R. Crim. P. 32.1(b)(2)(C); *cf. United States v. Law*, 528 F.3d 888 (D.C. Cir. 2008) (explaining that the Confrontation Clause bars the introduction of "*testimonial* out-of-court

---

[6] The cellphone videos appear in exhibits 5 and 6.

[7] The body-worn camera footage appears in exhibit 4.

*statements* by witnesses who are not subject to cross-examination" (emphasis added) (internal quotation marks and citation omitted)). As noted above, the Court will assume without deciding that the government has not shown good cause for admitting any hearsay statements in the videos. Although the government has not averred any explanation for failing to call Ms. Giles, *see* ECF No. 116, the Court finds Ms. Giles's statements during the videos highly reliable since they are corroborated by the videos' non-assertive visual contents. Nevertheless, because the Court anticipates that it will not need to rely on these statements to render a final decision on Violation 1, the Court will defer ruling on whether Ms. Giles's statements during the videos are inadmissible hearsay to a later date, should it even need to reach the issue.

Much the same can be said for the body-worn camera footage. That footage depicts Ms. Giles speaking with police and showing them a video on a cellphone. The Court will consider the footage and Detective Hain's corresponding testimony and need not yet decide the admissibility of any hearsay statements contained within the footage. As defense counsel pointed out during the final revocation hearing, "the Court can see the video [that Ms. Giles played for police] for itself." Hearing Tr. 28:17–19.

\* \* \*

The defendant's Motion to Strike Out of Court Statements is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court will not consider the drug test reports proffered by the government (exhibits 10 and 11) without first affording Mr. Cassell the opportunity to confront the lab examiner who prepared them. The Court will, however, consider the 911 calls placed by Ms. Giles (exhibits 2 and 3), the non-assertive contents of cellphone videos recorded by Ms. Giles (exhibits 5 and 6), and the non-assertive contents of body-worn camera footage depicting Ms. Giles speaking with police (exhibit 4). The Court will assume without deciding that the government has

9

not shown good cause to admit hearsay statements contained within these video exhibits, and the Court will not consider any of these statements when evaluating the evidence unless any confrontation issues have first been cured. The Court will decide on the admissibility of these hearsay statements at a later date, if necessary.

### III.     MOTION TO CONTINUE

After the final revocation hearing, the government moved to continue the presentation of evidence until after the conclusion of trial in District of Columbia Superior Court, which was scheduled to begin on March 30, 2024. ECF No. 109. The government explained that continuing the presentation of evidence would allow Mr. Cassell to "confront all relevant witnesses in Superior Court at trial" and "avoid an additional hearing where the government would present additional witnesses to resolve any potential objections based on the Confrontation Clause." ECF No. 109 at 2. That trial date was vacated, and the Superior Court case was dismissed after Ms. Giles failed to appear for a witness conference. ECF No. 116 at 2. The Court will construe the government's motion to continue as a motion to reopen the evidentiary record in light of the confrontation issues raised by Mr. Cassell.

The Court will reopen the evidentiary record for the limited purpose of permitting the government to cure any confrontation issues identified by the Court in the previous section. *See United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001) ("[T]he trial court[ has] wide latitude to receive evidence as it sees fit."); *see also* Fed. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence . . . ."); *cf. United States v. Martinez*, 872 F.3d 293, 298 (5th Cir. 2017) ("Generally, the reopening of a criminal case after the close of evidence lies within the sound discretion of the district court." ((internal quotation marks, alteration brackets, and citation omitted)).

The Court believes this course is proper because it instructed the government to proceed with its evidentiary presentation even as it reserved judgment—more precisely, invited briefing—on Mr. Cassell's confrontation objections. Hearing Tr. 9:25–10:6, 51:17–19. Had the Court ruled in Mr. Cassell's favor then and there, the government likely would have moved for a continuation, which the Court likely would have granted. The government indicated as much when it told the Court that "how Your Honor would rule on this motion would necessarily change the rest of the hearing." Hearing Tr. 10:4–5. The Court instructed the government to carry on regardless. Hearing Tr. 10:6. It is only fair that the Court permits the government to cure any violations that it incurred by following the Court's instructions. Further, the Court will permit Mr. Cassell to introduce new evidence and arguments based on any *Jencks* material not previously produced to defense counsel. Thus, the government's Motion to Continue is **GRANTED**.

## IV.   MOTION FOR AN EXTENSION OF TIME

The government's unopposed Motion for an Extension of Time to Respond to the defendant's Motion to Strike, ECF No. 115, is **DENIED AS MOOT**. The government has since filed its opposition to the defendant's motion. *See* ECF No. 116.

## V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the government's Motion [107] for Reconsideration is **DENIED**. It is further **ORDERED** that the government provide the Court with a proposed order that directs the disclosure of probation file materials to defense counsel.

It is further **ORDERED** that the defendant's Motion [113] to Strike Out of Court Statements is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court will not consider the drug test reports proffered by the government (exhibits 10 and 11) without first affording Mr. Cassell the opportunity to confront the lab examiner who prepared them. The Court will, however,

consider the 911 calls placed by Ms. Giles (exhibits 2 and 3), the non-assertive contents of cellphone videos recorded by Ms. Giles (exhibits 5 and 6), and the non-assertive contents of body-worn camera footage depicting Ms. Giles speaking with police (exhibit 4). The Court will assume without deciding that the government has not shown good cause to admit hearsay statements contained within these video exhibits, and the Court will not consider any of these hearsay statements when evaluating the evidence unless any confrontation issues have first been cured. The Court will decide on the admissibility of these hearsay statements at a later date, if necessary.

It is further **ORDERED** that the government's Motion [109] to Continue is **GRANTED**. The Court will reopen the evidentiary record for the limited purpose of permitting the government to cure any confrontation issues identified by the Court, including by calling the lab examiner as a witness so they can be subject to cross-examination by Mr. Cassell, and for the limited purpose of permitting Mr. Cassell to introduce new evidence and arguments based on any *Jencks* material not previously produced to defense counsel. The Court will hold a supplemental hearing for this purpose on a date to be determined. The Court intends to schedule a hearing on the Probation Petition [112] filed on February 13, 2024. The Court anticipates setting the supplemental hearing for the same date and time as the as-of-yet unscheduled Probation Petition [112] hearing. The parties should reach out to the Court's Deputy Clerk to schedule these proceedings. It is further **ORDERED** that the parties meet and confer before the supplemental hearing to discuss and narrow any evidentiary issues that may arise during the hearing. The Court intends to issue a final decision on revocation at the conclusion of the supplemental hearing or shortly thereafter.

It is further **ORDERED** that the government's Motion [115] for an Extension of Time is **DENIED AS MOOT**.

**SO ORDERED.**

Date: April __8, 2024

                                                                                                                           Royce C. Lamberth
United States District Judge